UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

BRANDON GUTIERREZ,

                       Plaintiff,

       v.

THE CITY OF NEW YORK, POLICE OFFICER
DERICK RUSS, POLICE OFFICER DANIEL
TRIONE, DETECTIVE JONATHAN BULZOMI,
SERGEANT JOHN DIAZ, POLICE OFFICER
CHARLES SCHWARTZ, SERGEANT TIMOTHY
CECCHINI, POLICE OFFICER JUSTIN PUCCIA,
SERGEANT HILLMAN, SERGEANT TIMOTHY
EVANS, and JOHN DOE and JANE DOE 1–5,

                    Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
18-CV-3621 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Brandon Gutierrez, proceeding *pro se*, commenced the above-captioned action

on June 21, 2018, against Defendants the City of New York (the "City"), New York City Police

Department ("NYPD") Officers Derick Russ, Daniel Trione, Charles Schwartz, and Justin

Puccia, Detective Jonathan Bulzomi, Sergeants John Diaz, Timothy Cecchini, Stephen Hillman,[1]

and Timothy Evans, and John Doe and Jane Doe 1–5.  (Compl., Docket Entry No. 1.)  Plaintiff

alleges that on July 18, 2015, Defendants wrongfully arrested him for crimes they were aware he

did not commit (the "Incident").  (*Id.* ¶¶ 22, 57.)  Plaintiff asserts claims pursuant to 42 U.S.C.

§ 1983 for false arrest, excessive use of force, failure to intervene, unreasonable detention, denial

---

[1] Although the Complaint identifies one of the Defendants as Sergeant "Hellman," without his first name, all of the documentation and filings submitted by Defendants' attorney uses the spelling Stephen "Hillman."  (*See, e.g.,* Decl. of Andrew B. Spears in Supp. of Defs.' Mot. ("Spears Decl.") 1, Docket Entry No. 43.)  Accordingly, the Court adopts the spelling of Defendant's name as Stephen "Hillman" for purposes of this Memorandum and Order.

of the right to a fair trial,[2] unlawful stop and frisk, unreasonable search and seizure, malicious

prosecution, conspiracy, and *Monell* liability.  (*Id.* at 7–16.)  Plaintiff also asserts several state

law claims for false arrest and imprisonment, assault and battery, malicious prosecution,

unreasonable search and seizure, negligence, and negligent and intentional infliction of

emotional distress and several claims under Article I, §§ 5, 6, 8, 11, and 12 of the New York

State Constitution.  (*Id.* at 16–21.)  Plaintiff seeks compensatory and punitive damages as well as

the costs of suit including reasonable attorneys' fees and any other relief that the Court deems

proper.  (*Id.* at 21.)

Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.  (Defs.' Mot. for Summ. J. ("Defs.' Mot."), Docket Entry No. 42; Defs.' Mem.

in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 44.)  Plaintiff has not opposed the

motion.  For the reasons discussed below, the Court grants the motion.

## I.   Background

The following facts are undisputed unless otherwise noted.

### a.   The Incident

On July 18, 2015, at approximately 4:00 PM, Jesus Pujols was at his barbershop and

cellular telephone repair business located at 3324 Fulton Street on the corner of Pine Street and

Fulton Street in Brooklyn, New York (the "Shop").[3]  Dane Tyndall, who knew Pujols from prior

---

[2]  Plaintiff asserts a claim for "fabrication of evidence and denial of [the] right to a fair trial."  (Compl. ¶¶ 78–82.)  Because Plaintiff's claim for a denial of a fair trial is premised on Defendants' alleged fabrication of evidence, the Court refers to it as a denial of the right to a fair trial claim.

[3]  (Defs.' Stmnt. of Material Facts pursuant to Local Rule 56.1 ("Defs.' 56.1") ¶¶ 11–14, Docket Entry No. 45; NYPD Compl. Report 2, annexed to Decl. of Andrew B. Spears in Supp. of Defs.' Mot. ("Spears Decl.") as Ex. C, Docket Entry No. 43-3; Jesus Pujols Tr. of Testimony

interactions, had contacted Pujols to "arrange a meetup" that day.  (Defs.' 56.1 ¶ 13; NYPD

Compl. Follow-Up Report ("NYPD Follow-Up Report"), annexed to Spears Decl. as Ex. D,

Docket Entry No. 43-4; Pujols Trial Tr. 45:1–45:7.)[4]  At approximately 4:00 PM, Tyndall

entered the Shop, and within the next hour at least two other individuals entered the Shop, "one

of whom was brandishing a black semi-automatic handgun."  (Defs.' 56.1 ¶ 16; NYPD Follow-

Up Report 2; Pujols Trial Tr. 45:1–45:7.)  Tyndall and the two other individuals (the

"Assailants") directed Pujols to his apartment, located below the Shop.  (Defs.' 56.1 ¶ 17; Pujols

Trial Tr. 45:23–46:14.)  Anamaria Agosto, Pujols' then-girlfriend, was inside Pujols' apartment

when the Assailants went downstairs.  (Defs.' 56.1 ¶ 18; NYPD Follow-Up Report 14.)  The

Assailants struck Pujols in the face with the handgun and kicked Agosto in the back and

stomach.  (Defs.' 56.1 ¶¶ 20, 22; NYPD Follow-Up Report 14; Pujols Trial Tr. 51:12–52:24.)

The Assailants took Pujols' Connecticut state driver's license, Pujols' New York state driver's

license, a religious ring, a necklace, a crucifix, a 30 gigabyte Apple iPod, a black Samsung

cellular telephone, a Samsung cellular telephone battery, a black LG cellular telephone, a black

Kyocera cellular telephone, a white Apple iPhone charging case, two Bic lighters, and $670

before fleeing the scene.[5]  The Assailants left the apartment with the stolen property and fled on

foot southbound on Pine Street.  (NYPD Follow-Up Report 14; Pujols Trial Tr. 59:3–6.)

---

in the Supreme Ct. for the State of New York, Kings County ("Pujols Trial Tr.") 44:10–44:17,
annexed to Spears Decl. as Ex. S, Docket Entry No. 43-19.)

[4]  Because the pages in the NYPD Follow-Up Report are not consecutively paginated, the
Court refers to the page numbers assigned by the electronic filing system.

[5]  (Defs.' 56.1 ¶¶ 23–24; NYPD Compl. Report 5; NYPD Stolen Property Report for
Jesus Pujols ("Pujols Stolen Property Report") 1, annexed to Spears Decl. as Ex. E, Docket Entry
No. 43-5; NYPD Stolen Property Report for Anamaria Agosto ("Agosto Stolen Property
Report") 1, annexed to Spears Decl. as Ex. F, Docket Entry No. 43-6.)

Defendants contend that Plaintiff was one of the Assailants.  (Defs.' Mem. 2.)  Plaintiff contends that he was not one of the Assailants.  (Dep. of Brandon Gutierrez ("Pl.'s Dep.") 57:3–7, annexed to Spears Decl. as Ex. A, Docket Entry No. 43-1; Compl. ¶ 23.)

At approximately 4:37 PM, after the Assailants left Pujols' apartment, Officers Russ and Trione were sitting in their police car near the corner of Fulton and Pine Street and were approached by Pujols and Agosto.[6]  Pujols and Agosto told the officers that they had just been robbed at gunpoint.  (Defs.' 56.1 ¶ 26; Russ Trial Tr. 413:16–414:4.)  Pujols entered Officers Russ and Trione's car and drove around with them while Agosto remained at the scene.  (Defs.' 56.1 ¶ 27; Russ Trial Tr. 415:19–416:17.)  While riding with Officers Russ and Trione, Pujols "positively identified [Plaintiff] to the officers as one of the individuals involved in the robbery earlier that afternoon."  (Defs.' 56.1 ¶ 28; Russ Trial Tr. 420:23–421:8; Pujols Trial Tr. 52:1–53:11.)  Pujols was between seven and eight feet away from Plaintiff when Pujols identified him.  (Pl.'s Dep. 61:5–15.)  Pujols could "clearly identify" Plaintiff and Plaintiff stated that he was able to "clearly see [Pujols'] face."  (*Id.* at 61:16–18.)

**b.  Plaintiff's arrest and trial**

Following the identification, at approximately 4:50 PM, Plaintiff was apprehended by Detective Bulzomi and was arrested by an unspecified officer.[7]  (Defs.' 56.1 ¶ 31; Pl.'s Dep. 60:3–22.)

---

[6]  (Defs.' 56.1 ¶ 25; Tr. of Det. Russ' Testimony in the Supreme Ct. for the State of New York, Kings County ("Russ Trial Tr.") 413:3–19, annexed to Spears Decl. as Ex. T, Docket Entry No. 43-20; Pujols Trial Tr. 60:16–61:3.)

[7]  Plaintiff appears to be unsure of the identity of his arresting officer and has indicated that he believes Officer Russ was his arresting officer because his name was on Plaintiff's arrest paperwork.  (Pl.'s Dep. 173:2–23.)  Defendants only identify the arresting officer as unspecified.  (Defs.' 56.1 ¶ 31.)

4

The parties dispute the nature and location of Plaintiff's apprehension.  Plaintiff contends that he was apprehended by the officers at a Foot Locker store on Liberty Avenue.  (Pl.'s Dep. 46:25–47:2, 49:21–50:6.)  Plaintiff testified that two officers approached him inside the store and told him to "come here," in reference to going outside.  (*Id.* at 52:3–4.)  When Plaintiff went outside, Pujols, sitting in one of the police cars, identified him as one of the Assailants.  (*Id.* at 52:3–17.)  The officers attempted to handcuff him, but Plaintiff resisted by "slapping [the officers'] hands away" and "brushing" the officers off while they attempted to restrain him.[8] (Pl.'s Dep. 61:22–25.)  Plaintiff also stated that the officers "tackled [him] to the ground and then . . . handcuffed and put [him]. . . in the cop car."  (*Id.* at 60:21–22.)  Defendants assert that Plaintiff was apprehended at Glen Street and Euclid Avenue.[9]  Defendants contend that Plaintiff was spotted by Detective Bulzomi "after being pointed out by a civilian livery driver," (Defs.' Mem. 2; Bulzomi Trial Tr. 306:11–307:7), and Plaintiff was "chased, apprehended, and placed in handcuffs without resistance" (Defs.' Mem. 2–3; Bulzomi Trial Tr. 307:16–307:21, 309:12–310:14).  Detective Bulzomi testified at Plaintiff's state trial that Plaintiff was placed in handcuffs while "[h]e was on the ground."  (Bulzomi Trial Tr. 311:8–11.)  The parties do not dispute that Plaintiff was not injured while in NYPD custody,[10] that Plaintiff did not complain of an injury during his arrest and detention, and that Plaintiff did not request medical attention during his arrest and detention.  (Defs.' 56.1 ¶¶ 33–36; Pl.'s Dep. 71:1–9.)

---

[8]  Plaintiff testified a short time after that he did not slap the officers' hands away because "[t]hat's assault."  (Pl.'s Dep. 71:17–19.)

[9] (Tr. of Det. Bulzomi's Testimony in the Supreme Ct. for the State of New York, Kings County ("Bulzomi Trial Tr.") 310:11–14, annexed to Spears Decl. as Ex. U, Docket Entry No. 43-21; Defs.' Mem. 5.)

[10]  Plaintiff testified that he did not have any injuries "except for . . . being scratched up when [the officers] tackled" him.  (Pl.'s Dep. 71:7–9.)

During Plaintiff's arrest, Detective Bulzomi searched Plaintiff and found several cellular telephones and a wallet.  (Defs.' 56.1 ¶¶ 37–38; Pl.'s Dep. 58:23–59:23.)  Defendants contend that Detective Bulzomi also found Pujols' Connecticut state license on Plaintiff's person, (Defs.' 56.1 ¶ 38; NYPD Compl. Report 6), although Plaintiff testified that he did not have Pujols' license when he was arrested, (Pl.'s Dep. 120:10–13).[11]  NYPD officers transported Plaintiff to the 75th Precinct, where he remained overnight.  (Defs.' 56.1 ¶ 40; Pl.'s Dep. at 64:17–19, 71:20–24; Bulzomi Trial Tr. 313:13–23.)  The same day, Detective Puccia apprehended Dillon Patterson as one of the Assailants and created a list of items recovered from Patterson.[12]  Pujols and Agosto each signed a stolen property report.  (Pujols Stolen Property Report; Agosto Stolen Property Report.)  Pujols reported as stolen a Connecticut state identification, a New York state driver's license, a leather wallet, a silver and gold crucifix with a chain, a Yankee hat, a 30 gigabyte Apple iPod and case, "assorted cell phones," one white iPhone 5 charging case, one Samsung cellular telephone battery, and $660 in cash.  (Pujols Stolen Property Report.)  Agosto reported as stolen a religious ring, two Bic lighters, one Samsung T-Mobile cellular telephone, one LG cellular telephone, one Kyocera cellular telephone, and $10 in cash.  (Agosto Stolen Property Report.)  At the 75th Precinct following Plaintiff's arrest, photographs were taken of the property recovered from Plaintiff and from Patterson.  (Defs.' 56.1 ¶¶ 45, 47; Photographs of Property Recovered from Plaintiff annexed to Spears Decl. as Ex. M, Docket Entry No. 43-13;

---

[11]  In his state criminal trial, Plaintiff moved to suppress evidence of the driver's license and cellular telephones recovered, but the court denied his motion.  (*See* Decision and Order by the Honorable John G. Ingram on Pl's Mot. to Suppress and Preclude Evidence ("Suppression Decision") 1 n.1, annexed to Spears Decl. as Ex. Q, Docket Entry No. 43-17.)

[12]  (Defs.' 56.1 ¶¶ 41–42; Photographs of Property Recovered from Patterson, annexed to Spears Decl. as Ex. N, Docket Entry No. 43-14; Tr. of Officer Puccia's Testimony in the Supreme Ct. for the State of New York, Kings County ("Puccia Trial Tr.") 805:5–21, annexed to Spears Decl. as Ex. V, Docket Entry No. 43-22.)

Photographs of Property Recovered from Patterson.)  On July 18, 2015, Officer Russ returned to

Pujols and Agosto the property recovered and identified as stolen.  (Defs.' 56.1 ¶ 48; Russ Trial

Tr. 428:17–21.)  Plaintiff contends that he owns all the property recovered from his person and

that none of the property recovered belongs to Pujols or Agosto.  (Pl.'s Dep. 54:8–54:17,

114:12–114:14.)

On July 19, 2015, at approximately 10:10 AM, Plaintiff was transported to Central

Booking and "was able to confer with an attorney."  (Defs.' 56.1 ¶ 50; Pl.'s Dep. 73:10–14.)  On

July 20, 2015, at approximately 1:19 AM, Plaintiff was arraigned on charges stemming from the

robbery at the shop including robbery in the first degree, burglary in the first degree, grand

larceny in the fourth degree, criminal use of a firearm in the first degree, criminal possession of

stolen property in the third degree, and criminal possession of a weapon in the third degree.

(Defs.' 56.1 ¶ 51; Plaintiff's Prisoner Arraignment Form ("Arraignment Form"), annexed to

Spears Decl. as Ex. J, Docket Entry No. 43-10.)  Plaintiff's bail was set at $30,000.[13]  (Defs.'

56.1 ¶ 52; Plaintiff's Undertaking of Bail Form ("Bail Form"), annexed to Spears Decl. as Ex. R,

Docket Entry No. 43-18.)  On August 13, 2015, Plaintiff was indicted.  (Defs.' 56.1 ¶ 53; Pl.'s

Kings County Indictment, annexed to Spears Decl. as Ex. P, Docket Entry No. 43-16.)

Between June 6, 2017 and June 23, 2017, Plaintiff stood trial in the Supreme Court for

the State of New York, Kings County on charges of two counts of robbery in the first degree,

burglary in the first degree, robbery in the second degree, burglary in the third degree, and two

counts of criminal possession of stolen property in the fifth degree.  (Defs.' 56.1 ¶¶ 53–54; Pl.'s

Kings County Indictment.)  On June 23, 2017, a jury found Plaintiff not guilty on each of the

---

[13]  Although not referenced in Defendants' 56.1 statement, Plaintiff indicates that he was incarcerated for nearly two years before he was able to make bail.  (*See* Pl.'s Dep. 66:2–4, 82:15–83:4, 120:24–121:2.)

charges.  (Defs.' 56.1 ¶ 58, Excerpts from Pl.'s Tr. Proceedings, annexed to Spears Decl. as Ex.

X, Docket Entry No. 43-24; Certificate of Disposition Acquittal, annexed to Spears Decl. as Ex.

Z, Docket Entry No. 43-26.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Wandering*

*Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA N.Y.C. Transit*, 802

F.3d 226, 230 (2d Cir. 2015).  The court must "constru[e] the evidence in the light most

favorable to the non-moving party" and "resolve all ambiguities and draw all permissible factual

inferences in favor of the party against whom summary judgment is sought."  *Lenzi v. Systemax,*

*Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (first quoting *VKK Corp. v. Nat'l Football League*, 244

F.3d 114, 118 (2d Cir. 2001); and then quoting *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir.

2006)).  The role of the court "is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists."  *Rogoz v. City of Hartford*,

796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir.

2010)) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)).  A genuine issue

of fact exists when there is sufficient "evidence on which the jury could reasonably find for the

plaintiff."  *Anderson*, 477 U.S. at 252.  The "mere existence of a scintilla of evidence" is not

sufficient to defeat summary judgment.  *Id.*  The court's function is to decide "whether, after

resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational

juror could find in favor of that party."  *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir.

2000).

Where a motion for summary judgment is unopposed, the district court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)); *see also Lue v. JPMorgan Chase & Co.*, 768 F. App'x 7, 10 (2d Cir. 2019) ("Where a motion for summary judgment is unopposed, summary judgment is proper only if the court is satisfied that the moving party has met its burden with sufficient support in the record evidence."), *cert. denied*, 140 S. Ct. 388 (2019); *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[S]ummary judgment only is 'appropriate' when the moving party has met its burden of production under Fed. R. Civ. P. 56(c) 'to show initially the absence of a genuine issue concerning any material fact.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970))). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (citing *Vt. Teddy Bear Co.*, 373 F.3d at 244). "In doing so, the court may rely on other evidence in the record even if uncited." *Id.* (citing Fed. R. Civ. P. 56(c)(3)).

**b. Plaintiff's credibility**

As a threshold matter, Defendants argue that the Court should disregard Plaintiff's version of events because it is "wholly implausible[] and unsupported by the record." (Defs.' Mem. 5.) In support, Defendants contend that "[w]hile credibility determinations are not typically within the Court's purview at the summary judgment stage," a court may decline to credit a plaintiff's testimony when "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint." (*Id.* (alteration in

original) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005)).  Defendants argue that Plaintiff is not credible because (1) Plaintiff alleges that he was arrested "outside of a Foot Locker store approximately half a mile away from Euclid Avenue and Glen Street" where Defendants allege Plaintiff's arrest occurred, (2) Plaintiff fails to adduce any evidence such as video or a receipt from Foot Locker suggesting that he was arrested outside of the Foot Locker, and (3) Plaintiff's notice of claim "conclusively states that the arrest occurred near 3324 Fulton Street."  (*Id.* at 5–6 (citing Personal Injury Claim Form, annexed to Spears Decl. as Ex. BB, Docket Entry No. 43-28).)

"Assessments of credibility and choices between conflicting versions of . . . events are matters for the jury, not for the court on summary judgment."  *Jeffreys*, 426 F.3d at 553–54 (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)); *see also Green v. Shaw*, 827 F. App'x 95, 96 (2d Cir. 2020) (quoting *Jeffreys*, 426 F.3d at 553).  In *Jeffreys*, the Second Circuit recognized a "narrow exception 'in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete."  *Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) (quoting *Jeffreys*, 426 F.3d at 554).  However, the Second Circuit has emphasized that "the *Jeffreys* exception is narrow, and it applies only 'in the rare circumstance where' a witness's testimony is so problematic that no reasonable juror could credit it."  *Id.* at 246 (quoting *Jeffreys*, 426 F.3d at 554).  In ordinary cases when a district court is faced with "the contradictory deposition testimony [or declaration] of a fact witness . . . , the general rule remains that a district court may not discredit a witness's deposition testimony [or declaration] on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury."  *Id.* (alterations in

original) (quoting *In re Fosamax Prod. Liab. Litig.*, 707 F.3d 189, 194 n.4 (2d Cir. 2013) (per curiam)).

The Court declines to discredit Plaintiff's version of events.  The fact that Plaintiff's testimony regarding the location of his arrest does not align with Defendants' account or with "all documentation of Plaintiff's arrest," (Defs.' Mem. 5–6), indicates that there is a conflict between Plaintiff and Defendants' versions of events, but this conflict does not demonstrate that Plaintiff is sufficiently contradicting himself to render Plaintiff's testimony incredible.  *See Jeffreys*, 426 F.3d at 555 (finding plaintiff's testimony problematic because there was "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony" and because "no reasonable person could believe [plaintiff's] testimony" (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 263, 477 (S.D.N.Y. 2003))).

In addition, although there are some internal inconsistencies in Plaintiff's testimony such as the location of his arrest, (*compare* Pl.'s Dep. 46:25–47:2, 49:21–50:4 (stating location of apprehension as at a Foot Locker store on Liberty Avenue), *with* Personal Injury Claim Form (listing location of the Incident as 3324 Fulton Street)), and whether Plaintiff slapped the hands of the officers as they attempted to handcuff him, (*compare* Pl.'s Dep. 61:22–25 (stating that Plaintiff resisted by "slapping [the officers'] hands away" and "brushing" the officers off while they attempted to restrain him), *with id.* at 71:17–19 (stating that Plaintiff did not slap the officers' hands away because "[t]hat's assault")), these inconsistencies are not fatal to Plaintiff's credibility as these deviations are relatively minor.  (*See* Defs.' Mem. 5–6 (stating that the location that Plaintiff provided was only half a mile away from where Defendants allege Plaintiff was arrested)); *see also Matheson v. Kitchen*, 515 F. App'x 21, 24 (2d Cir. 2013) (holding that the district court erred when it excluded testimony because "[w]hile some of the inconsistencies

identified by the court below might well lead a jury to reject the credibility of [the] testimony,
they do not place this case among the 'extraordinary cases, where the facts alleged are so
contradictory that doubt is cast upon their plausibility'" (quoting *Rojas v. Roman Catholic
Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011))); *Ifudu v. City of New York,* No. 16-CV-
2957, 2018 WL 4568799, at *4–5 (E.D.N.Y. Sept. 24, 2018) (finding discrepancies in plaintiff's
testimony as to the identity and number of arresting officers amount to "minor contradictions"
that do not warrant disregarding Plaintiff's testimony).

 Accordingly, the Court declines to discredit Plaintiff's version of events.

 **c.** **Section 1983 claims**

 Defendants move for summary judgment on Plaintiff's claims of false arrest, unlawful
stop and search, malicious prosecution, excessive use of force, denial of a fair trial, conspiracy,
excessive detention, failure to intervene, and municipal liability.

 Under section 1983, individuals may bring a private cause of action against persons
"acting under color of state law" to recover money damages for deprivations of their federal or
constitutional rights. *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014)
(quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the
violation of a right secured by the Constitution and laws of the United States" and that "the
alleged deprivation was committed by a person acting under color of state law." *Vega v.
Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations omitted); *see
also Collymore v. City of New York*, 767 F. App'x 42, 45 (2d Cir. 2019) (quoting *Vega*, 801 F.3d
at 87–88).

### i. False arrest

Defendants argue they are entitled to summary judgment on Plaintiff's false arrest claim because (1) Plaintiff cannot establish personal involvement of all Defendants and (2) Defendants had probable cause to arrest Plaintiff as a result of Pujols positively identifying Plaintiff as one of the Assailants. (Defs.' Mem. 6–9.) The Court addresses each argument in turn.

### 1. Lack of personal involvement of Sergeants Cecchini, Evans, and Hillman and Officer Puccia

Defendants argue that Plaintiff cannot establish personal involvement of all Defendants because there is no evidence that Sergeants Cecchini, Evans and Hillman, or Officer Puccia were personally involved in Plaintiff's arrest. (*Id.* at 9.) In support, Defendants argue that these defendants were likely either involved in "the apprehension of the other assailants who robbed and assaulted" Pujols and Agosto, "or the ensuing investigation into the robbery." (*Id.* at 9–10.) Because these officers were not personally involved in Plaintiff's arrest, Defendants argue that they are entitled to summary judgment on Plaintiff's false arrest claim.

"[T]he 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)), *as amended* (Feb. 24, 2016). A plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell*, 449 F.3d at 484 ("It is well settled in this Circuit that personal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))). As the Second Circuit recently made clear, "there is no special rule for supervisory liability," and to find a state official liable under section 1983, "a plaintiff must plead that each [g]overnment-official

13

defendant, through the official's own individual actions, has violated the Constitution." *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  Being in the chain of command is not sufficient to satisfy personal involvement as the "violation must be established against the supervisory official *directly*." *Id.* at 618.

      The Court grants Defendants' motion for summary judgment as to the false arrest claims against Sergeants Cecchini, Evans, and Hillman and Officer Puccia because, based on the undisputed facts, there is no evidence that they participated in, and were therefore personally involved with, Plaintiff's arrest.  The existing evidence regarding these Defendants' involvement is minimal.  Officer Puccia testified at Plaintiff's criminal trial that he was involved with apprehending Patterson (not Plaintiff) at the scene.  (Puccia Trial Tr. 805:1–25.)  Sergeant Evans testified at the criminal trial that he was "assigned to investigate what happened" at the Shop. (Tr. of Sergeant Evans' Testimony in the Supreme Ct. for the State of New York, Kings County ("Evans Trial Tr.") 702:20–25, annexed to Spears Decl. as Ex. W, Docket Entry No. 43-23.) During his deposition, when Plaintiff was asked about why he was suing Sergeants Cecchini, Evans, and Hillman and Officer Puccia, he responded by generally alleging that "[c]ertain individuals" were involved in his case, and that he "want[ed] them to be responsible for [his] property disappearing."  (Pl.'s Dep. 174:14–25.)  Plaintiff also testified that he recognized the officers generally "from when they arrested me," and that he does not know "what [role] each person . . . played" in his trial or the Incident.  (*Id.* at 175:10–176:12.)  Because Plaintiff does not contend that Sergeants Cecchini, Evans, and Hillman, or Officer Puccia were involved in his arrest in any way nor does he adduce any evidence demonstrating otherwise, there is no genuine dispute of material facts such that a jury could reasonably hold these Defendants liable.  *See*

14

*Provost v. City of Newburgh*, 262 F.3d 146, 156 (2d Cir. 2001) ("Because the evidence fails to show that [the officer] was aware of the facts that made the arrest unconstitutional, the jury could not hold [the officer] liable on the basis of his personal involvement in the illegal arrests."); *Reen v. City of New York*, No. 16-CV-3347, 2018 WL 4608194, at *8 n.7 (E.D.N.Y. Sept. 25, 2018) (granting summary judgment to defendant for lack of personal involvement when defendant "neither ordered nor executed [p]laintiff's arrest" (citing *Wright*, 21 F.3d at 501)); *Cortes v. City of New York*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (dismissing false arrest claim when there was no evidence that the officer was present for or played any role in the plaintiff's arrest).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest claims against Sergeants Cecchini, Evans, and Hillman and Officer Puccia.

### 2.  Defendants had probable cause to arrest Plaintiff

Defendants argue that "identification by a complaining victim establishes probable cause unless the circumstances raise doubt as to the complainant's veracity."  (Defs.' Mem. 7 (quoting *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012)).)  Because Plaintiff was "clearly" identified by Pujols when he was seven or eight feet away, "was apprehended within a short distance of the location of the crime within approximately [twenty] minutes," and had property that Pujols identified as his, Defendants assert that the circumstances "do not raise doubt" regarding the veracity of Pujols' testimony.  (*Id.* at 6–7.)

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  A law enforcement official violates the Fourth Amendment's protections if he or she arrests someone without probable cause.  *Id*.  In addressing a section 1983 claim for false arrest, courts look to "the law of the state in which the arrest occurred" to determine if the officers had probable cause

to arrest the plaintiff for a violation of state law.  *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *see also Ackerson v. City of White Plains*, 702 F.3d 15, 19–21 (2d Cir. 2012) (analyzing whether the plaintiff's actions gave a police officer probable cause to arrest the plaintiff for violating state law).  "Under New York law, the elements of a false arrest . . . claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)).

"[P]robable cause is an absolute defense to a false arrest claim."  *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010)).  "A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime . . . .'"  *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013).  The reviewing court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it."  *Stansbury*, 721 F.3d at 89 (alteration in original) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).  Probable cause need not be "predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer."  *Jaegly*, 439 F.3d at 153 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *id.* at 154 ("[A] plaintiff is not entitled to damages under [section] 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified

16

by the arresting officer at the time of arrest.").  The question is whether the facts known to the arresting officer, at the time of the arrest, objectively support a finding of probable cause to support the arrest.  *Gonzalez*, 728 F.3d at 155.

"Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (first citing *United States v. Hensley*, 469 U.S. 221, 230–33 (1985); and then citing *United States v. Canieso*, 470 F.2d 1224, 1230 n.7 (2d Cir. 1972)).  "Under this doctrine, a police officer may act reasonably in relying on information from other law enforcement officers, even if he is not personally aware of the facts that provided the probable cause underlying the information he received."  *United States v. Fleming*, No. 18-CR-197, 2019 WL 486073, at *8 (E.D.N.Y. Feb. 6, 2019) (citing *Colon*, 250 F.3d at 135); *Strawn v. Holohan*, No. 04-CV-1292, 2008 WL 65586, at *6 n.9 (N.D.N.Y. Jan. 4, 2008) ("Under the collective knowledge doctrine, for purposes of assessing probable cause, the knowledge of one officer is presumed shared by all." (citing *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003)).

It is well-established that a law enforcement officer has "probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth."  *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *see also Williams v. City of New York*, 683 F. App'x 57, 59 (2d Cir. 2017) (holding that "the circumstances known to the arresting officers in each of the three arrests did not 'raise doubts as to [the victim's] veracity' such that the officers were unjustified in relying on [the

victim's] accusations" as the basis for probable cause (quoting *Singer v. Fulton Cnty. Sheriff*, 63

F.3d 110, 119 (2d Cir. 1995)); *Fabrikant*, 691 F.3d at 216 ("A law enforcement official has

probable cause to arrest if he received his information from some person, normally the putative

victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."

(alterations and citations omitted)); *Singer*, 63 F.3d at 119 ("An arresting officer advised of a

crime by a person who claims to be the victim, and who has signed a complaint or information

charging someone with the crime, has probable cause to effect an arrest absent circumstances

that raise doubts as to the victim's veracity.").  Absent "circumstances that raise doubts as to the

victim's veracity, a victim's identification is typically sufficient to provide probable cause."

*Keith v. City of New York*, 641 F. App'x 63, 65 (2d Cir. 2016) (internal quotation marks omitted)

(quoting *Stansbury*, 721 F.3d at 90).

The undisputed facts and sworn testimony establish that Officers Russ, Trione and

Schwartz, Detective Bulzomi, and Sergeant Diaz had probable cause to arrest Plaintiff.  First, the

officers had probable cause based on Pujols' identification of Plaintiff as one of the Assailants.

*See Keith*, 641 F. App'x at 65 (stating that "a victim's identification is typically sufficient to

provide probable cause"); *Tortora v. City of New York*, No. 15-CV-3717, 2019 WL 9100369, at

*16 (E.D.N.Y. Mar. 30, 2019) (finding probable cause when complaining victim who saw

plaintiff enter her backyard identified plaintiff as one of the perpetrators), *aff'd*, 804 F. App'x 35

(2d Cir. 2020).  The parties agree that on July 18, 2015, while riding with Officers Russ and

Trione, Pujols "positively identified [P]laintiff to the officers as one of the individuals involved

in the robbery earlier that afternoon."  (Defs.' 56.1 ¶ 28; Russ Trial Tr. 420:23–421:8; Pl.'s Dep.

52:1–53:11.)  Detective Bulzomi, assisted by Sergeant Diaz and Officer Schwartz (who were in

another vehicle) apprehended Plaintiff, (Defs.' 56.1 ¶ 31; NYPD Arrest Report; Bulzomi Trial

Tr. 310:6–14), and an unspecified officer arrested him, (Defs.' 56.1 ¶ 31; Pl.'s Dep. 60:3–22).[14]

The circumstances do not raise doubt as to the victim's veracity because Pujols was

approximately seven to eight feet away from Plaintiff when he identified him as one of the

Assailants and, by Plaintiff's own admission, was able to "clearly identify" Plaintiff.  (Pl.'s Dep.

61:5–18).  In addition, Pujols identified Plaintiff shortly after the robbery at the Shop.  (Defs.'

56.1 ¶¶ 14, 25 (stating that the Assailants entered the shop after 4 PM and apprehension of

Plaintiff occurred around 4:37 PM).)  The proximity, both physically between the complaining

victim and the identifying witness, and temporally after the robbery at the Shop, weighs in favor

of reliability of Pujols' identification.  *Jay v. Conway*, No. 04-CV-5589, 2009 WL 66464, at *2

(E.D.N.Y. Jan. 9, 2009) (finding in the habeas context that an identification from a "close

distance" and "soon after the crime" are factors indicating reliability of an identification); *see

also Batson-Kirk v. City of New York*, No. 07-CV-1950, 2009 WL 1505707, at *7 (E.D.N.Y.

May 28, 2009) (finding probable cause existed when the police officer and eyewitness

"canvassed the vicinity of the assault in an effort to identify the assailants" one week after an

assault and the eyewitness positively identified the plaintiff three times prior to his arrest).

---

[14]  Although Plaintiff does not provide evidence as to the exact role of each Defendant in his arrest and Defendants do not argue lack of personal involvement with respect to these defendants, the Court nevertheless notes that the undisputed facts establish personal involvement on the parts of Officers Russ, Trione, and Schwartz, Detective Bulzomi, and Sergeant Diaz, because they either helped execute Plaintiff's arrest or were present for the arrest.  *See Reen v. City of New York*, No. 16-CV-3347, 2018 WL 4608194, at *8 n.7 (E.D.N.Y. Sept. 25, 2018) (granting summary judgment in favor of defendant for lack of personal involvement when defendant "neither ordered nor executed [p]laintiff's arrest" (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))); *Cortes v. City of New York*, 148 F. Supp. 3d 248, 255 (E.D.N.Y. 2015) (dismissing false arrest claim when there was no evidence that the officer was present for or played any role in the plaintiff's arrest).

Although the parties dispute the precise location of Plaintiff's arrest, the exact location of the arrest does not raise doubt as to the veracity of Pujols' identification. Plaintiff contends that he was apprehended in front of a Foot Locker store on Liberty Avenue, (Pl.'s Dep. 46:25–47:2), and Defendants contend that Plaintiff was apprehended at the intersection of Glen Street and Euclid Avenue, (Bulzomi Trial Tr. 310:11–14; Defs.' Mem. 5). These locations are "approximately half a mile" apart from each other, (Defs.' Mem. 5), which does not cast doubt upon Pujols' identification. *De Michele v. City of New York*, No. 09-CV-9334, 2012 WL 4354763, at *11 (S.D.N.Y. Sept. 24, 2012) (finding that victim identifications of plaintiff two to three hours after a robbery at a location approximately four miles away does not render the identifications "so defective that probable cause could not reasonably be based" on them (quoting *Williams v. City of New York*, 478 F.3d 76, 93 (2d Cir. 2007))). In addition, given the identification of Plaintiff by the victim, the officers were not obligated to investigate Plaintiff's claim that he was at Foot Locker at the time of the robbery based on Plaintiff's claim that he was. *Tortora*, 2019 WL 9100369, at *18 (finding that an officer was "under no obligation to investigate or rely upon" assertions that plaintiff was somewhere else at the time of the arrest); *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 224 (E.D.N.Y. 2007) (finding the plaintiff's claim that probable cause dissipated meritless because the police have no obligation to investigate a defendant's alibi and any failure to do so would not have vitiated the existence of probable cause (citations and internal quotation marks omitted)); *see also Celestin v. City of New York*, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008) (finding that a detective "was not required to investigate [the plaintiff's] alibi or exhaustively search for other suspects before acting on the facts at hand" because "once the evidence establishe[d] probable cause, an officer is not required to continue

investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence").

Because Pujols' identification of Plaintiff supports probable cause for his arrest,[15] *see Biton v. City of New York*, No. 17-CV-3981, 2020 WL 7024363, at *4 (E.D.N.Y. Nov. 30, 2020) ("[A] victim's identification of an assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.'" (quoting *Angevin v.*

---

[15] Defendants argue that Plaintiff should be judicially estopped from asserting that he did not have Pujols' Connecticut state driver's license on his person because during Plaintiff's criminal proceedings, Plaintiff admitted stating to Detective Bulzomi that he found Pujols' driver's license on the day of the robbery. (Defs.' Mem. 8.) The Court declines to exercise its discretion to invoke judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742 (2001) (noting that judicial estoppel is an equitable doctrine invoked in the court's discretion). "Judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Id.* (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)). Although it seems that Plaintiff may have made inconsistent statements as to whether he had Pujols' Connecticut driver's license on the day he was arrested, the Court does not find that the state court adopted this position and determined that he possessed the license. In denying a suppression motion, the state court merely ruled that Plaintiff's statement that he found the license was admissible because Plaintiff made the statement in response to Detective Bulzomi asking for pedigree information. (*See* Suppression Decision 4.) Denying a motion for suppression stands in contrast to other situations where courts have found judicial estoppel appropriate. *Cf. Frost v. New York City Police Dep't*, 980 F.3d 231, 256 (2d Cir. 2020) (estopping plaintiff from denying that he secreted a weapon because plaintiff "specifically admitted to possessing the weapon, and the court adopted that position in accepting his guilty plea"); *Kuar v. Mawn*, No. 08-CV-4401, 2011 WL 838911, at *6 (E.D.N.Y. Mar. 4, 2011) ("[U]nder the doctrine of judicial estoppel, the Court will preclude plaintiff from taking factual positions in this case which are directly contrary to statements that he made in connection with his plea and that were adopted by the court which accepted his plea.").

However, even accepting Plaintiff's argument that the officers did not find Pujols' Connecticut state driver's license on his person, the officers nevertheless had probable cause based on the veracity of Pujols' identification. *See Keith*, 641 F. App'x at 65 (stating that "a victim's identification is typically sufficient to provide probable cause").

*City of New York*, 204 F. Supp. 3d 469, 479 (E.D.N.Y. 2016))), the Court grants Defendants'

motion for summary judgment as to Plaintiff's false arrest claim.[16]

### ii.    Unlawful stop and search

Defendants argue that Plaintiff's claim for an unlawful stop and search similarly fails

because the existence of probable cause to arrest "necessarily renders the stop and search

incident to that arrest lawful."  (Defs.' Mem. 9 (citing *Cooper v. Dieugenia*, No. 14-CV-6136,

2017 WL 818367, *3 n.5 (E.D.N.Y. Feb. 27, 2017)).)

Because the undisputed facts demonstrate that Plaintiff's search was conducted incident

to his lawful arrest, (*see* Defs.' 56.1 ¶ 37), the Court finds that the stop and search were also

lawful.  *See Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("We have recognized, however, that

officers may perform searches incident to constitutionally permissible arrests in order to ensure

their safety and safeguard evidence." (citing *United States v. Robinson*, 414 U.S. 218 (1973));

*Barnes v. Carolan*, 819 F. App'x 51, 53 (2d Cir. 2020) ("A search incident to arrest is lawful

where the officer reasonably believed he had probable cause, regardless of whether the officer

actually intended to arrest the suspect (or simply issue a ticket or violation) prior to the search."

(citing *United States v. Diaz*, 854 F.3d 197, 205–09 (2d Cir. 2017)); *Walker v. City of New York*,

No. 15-CV-500, 2017 WL 2799159, at *6 (E.D.N.Y. June 27, 2017) ("Because there was

---

[16]    In the Complaint, Plaintiff asserts a claim for "unreasonable search and seizure"
pursuant to section 1983 in addition to a claim of false arrest.  (Compl. ¶¶ 87–90.)  Although
Defendants do not specifically move for summary judgment as to Plaintiff's "unreasonable
search and seizure" claim, they request that the Court grant summary judgment in their favor and
dismiss the Complaint in its entirety.  (Defs.' Mem. 1, 25.)  Because probable cause is a defense
to unreasonable searches and seizures, *see Serrano v. City of New York*, No. 16-CV-8105, 2018
WL 3392869, at *8 (S.D.N.Y. July 12, 2018) ("[U]nreasonable search and seizure claims turn
entirely on the probable cause analysis.") *aff'd*, 793 F. App'x 29 (2d Cir. 2019), the Court
construes Defendants' summary judgment motion to include Plaintiff's unreasonable search and
seizure claim and grants Defendants' motion.

probable cause for plaintiff's arrest, the search of his person was lawful." (citing *Virginia*, 553 U.S. at 176–77)); *Cooper*, 2017 WL 818367, at *3 n.5, *8 ("The parties' arguments regarding the legality of the stop and search rise or fall with the probable cause determination relating to [the] [p]laintiff's false arrest claim." ); *Bryant v. Serebrenik*, No. 15-CV-3762, 2016 WL 6426372, at *2 n.2, 3 (E.D.N.Y. Oct. 28, 2016) (denying summary judgment on both plaintiffs' false arrest and unlawful stop and search claims because defendants failed to show that undisputed facts established probable cause to arrest, and plaintiffs were stopped and searched after, and incident to, their arrests); *Morris v. City of New York*, 2013 WL 5781672, at *8 (E.D.N.Y. Oct. 28, 2013) ("[P]robable cause to arrest supported a search of [the plaintiff] herself and of the areas within her reach at the time of arrest."), *aff'd sub nom. Morris v. Silvestre*, 604 F. App'x 22 (2d Cir. 2015).

Moreover, the undisputed facts also demonstrate that, for the reasons stated with respect to Plaintiff's false arrest claim, Sergeants Cecchini, Evans, and Hillman and Officer Puccia were not personally involved with Plaintiff's search incident to his arrest.  There is no evidence in the record that these Defendants participated in, and were therefore personally involved with, Plaintiff's search incident to his arrest.  (*See, e.g.*, Pl.'s Dep. 174:14–25 (contending that he does not know what role each officer played in his trial or the Incident); Puccia Trial Tr. 805:1–25 (stating that he was involved with apprehending Patterson at the scene); Evans Trial Tr. 702:20–25 (stating that he was "assigned to investigate what happened" at the Shop); Bulzomi Trial Tr. 311:15–20, 313:3–14 (indicating that he was the officer who searched Plaintiff incident to his arrest).)  Because Plaintiff does not contend that Sergeants Cecchini, Evans, and Hillman or Officer Puccia were involved in his search incident to his arrest in any way nor does he adduce

23

any evidence demonstrating otherwise, there is no genuine dispute of material fact such that a jury could reasonably hold these Defendants liable.  *See Provost*, 262 F.3d at 156.

Accordingly, because Pujols' identification of Plaintiff supports probable cause for his arrest and because the evidence does not indicate a genuine dispute as to whether Defendants Sergeants Cecchini, Evans, and Hillman or Officer Puccia were involved in Plaintiff's search incident to his arrest, the Court grants Defendants summary judgment as to Plaintiff's unlawful stop and search claim.

### iii.   Malicious prosecution

Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claim because (1) Plaintiff cannot establish personal involvement for all Defendants and (2) continuing probable cause existed for Plaintiff's prosecution.  (Defs.' Mem. 10–11.)  The Court addresses each argument in turn.

### 1.   Lack of personal involvement of Sergeants Diaz and Hillman, and Officers Schwartz and Trione

Defendants argue that Plaintiff cannot establish personal involvement of all Defendants as required under section 1983 because there is no evidence that Sergeants Diaz and Hillman and Officers Schwartz and Trione were "involved in the initiation or continuation of Plaintiff's prosecution."  (*Id.* at 11.)  Defendants assert that only Sergeants Cecchini and Evans, Detective Bulzomi, and Officers Russ and Puccia were personally involved because Officer Russ signed the criminal court complaint against Plaintiff and Detective Bulzomi, Officers Russ and Puccia, and Sergeants Evans and Cecchini testified at Plaintiff's criminal trial.  (*Id.*)

As discussed above, defendants in alleged constitutional deprivations must be personally involved as "a prerequisite to an award of damages under [section] 1983.'"  *Victory*, 814 F.3d at 67 (quoting *Farrell*, 449 F.3d at 484).

24

The Court grants Defendants' motion for summary judgment as to the malicious prosecution claim against Sergeants Diaz and Hillman and Officers Schwartz and Trione because there is no evidence that they participated in, and were therefore personally involved with, Plaintiff's prosecution.  As Defendants accurately note, while it is undisputed that Sergeants Cecchini and Evans, Detective Bulzomi, and Officers Russ and Puccia testified at Plaintiff's trial, (*see* Defs.' Mem. 11; Russ Trial Tr.; Evans Trial Tr.; Bulzomi Trial Tr.; Puccia Trial Tr.), there is no evidence in the record indicating that Sergeants Diaz and Hillman, and Officers Schwartz or Trione played any role in Plaintiff's prosecution.  During his deposition, when Plaintiff was asked why he was suing these officers, he responded by generally alleging that "[c]ertain individuals" were involved in his case, and that he "want[ed] them to be responsible for [his] property disappearing."  (Pl.'s Dep. 174:14–25.)  Plaintiff also testified that he recognized the officers generally "from when they arrested me," and that he does not know "what [role] each person . . . played" in his trial or the Incident.  (*Id.* at 175:10–15, 177:7–15.)  Because Plaintiff does not contend that Sergeants Diaz and Hillman, and Officers Schwartz and Trione played any role in Plaintiff's prosecution, there is no genuine dispute of material facts such that a jury could reasonably hold these Defendants liable.[17]  *See, e.g.*, *Barber v. Ruzzo*, No.

---

[17]  Although it is possible that Officer Trione was present during Plaintiff's arrest, there is no evidence to suggest he "play[ed] an active role in the prosecution" to support his personal involvement.  *See Balde v. Rickford*, No. 17-CV-1846, 2019 WL 2225397, at *8 (S.D.N.Y. May 23, 2019) ("While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to play an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." (quoting *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015))); *Felix v. New York State Dep't of Corr. & Cmty. Supervision*, No. 16-CV-7978, 2018 WL 3542859, at *9 (S.D.N.Y. July 23, 2018) (dismissing malicious prosecution claim for lack of personal involvement when officer was present for the plaintiff's arrest but the plaintiff "does not identify any involvement on their parts in the commencement or continuation of [p]laintiff's revocation proceedings").

10-CV-1198, 2011 WL 4965343, at *2 (N.D.N.Y. Oct. 19, 2011) ("Simply stating that [the defendants] were 'personally and actively involved in the continuation of criminal proceedings against [a plaintiff],' is grossly insufficient to establish personal involvement in the actual prosecution." (alterations in original)); *Celestin*, 581 F. Supp. 2d at 429 (finding no personal involvement in plaintiff's prosecution when defendants merely interviewed witnesses, collected evidence, and passed on information learned to other officers who are participating in the investigation).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution against Sergeants Diaz and Hillman and Officers Schwartz and Trione.

### 2.   Continuing probable cause

Defendants argue they are entitled to summary judgment on Plaintiff's malicious prosecution claim because continuing probable cause existed for Plaintiff's prosecution.  (Defs.' Mem. 10–11.)  In support, Defendants contend that continuing probable cause existed because Pujols never recanted his identification of Plaintiff and "again conclusively identified Plaintiff as one of the [A]ssailants at [P]laintiff's criminal trial," because Pujols and Agosto "signed stolen property reports listing as their own property that was recovered from [P]laintiff's person," and because Plaintiff's indictment by a grand jury established a presumption of probable cause for his prosecution.  (*Id.* at 10–11 & n.3.)

The Second Circuit has clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a [s]tate's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).  To prevail on a section 1983 claim for malicious

prosecution, a Plaintiff is "required to show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment,'" *id.* at 24 (alteration in original) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)), and "that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor," *id.* (first citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); and then citing *Swartz*, 704 F.3d at 111–12). Under section 1983, a plaintiff is required to show an "affirmative indication[] of innocence to establish 'favorable termination.'" *Id.* at 25.

    "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (alteration in original) (quoting *Manganiello v. City of New York*, 612 F.3d 140, 161 (2d Cir. 2010))). A plaintiff may overcome the presumption of probable cause by presenting evidence that "the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015); *Manganiello*, 612 F.3d at 162. Raising doubts about probable cause is insufficient. *Ramashwar v. City of New York*, 231 F. App'x 26, 27 (2d Cir. 2007) (noting that plaintiff "raised some questions of fact" that "merely tend[ed] to show the absence of probable cause" (citing *Colon*, 60 N.Y.2d at 83)); *Banno v. City of New York*, No. 06-CV-2270, 2015 WL 845709, at *5 (S.D.N.Y. Feb. 25, 2015) (finding that plaintiff did not overcome the presumption where he "merely assert[ed] that for the same reason[s] there [was] a question of fact as to probable cause for the false arrest claim" (citing *Colon*, 60 N.Y.2d at 83)); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (finding that plaintiff could not overcome the presumption by "merely

claim[ing] that [the officer] failed to interview witnesses and to discover additional evidence"). Likewise, where a plaintiff offers merely his version of events to rebut the presumption, this is nothing more than "mere 'conjecture' and 'surmise' that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith," and is insufficient. *Savino*, 331 F.3d at 73 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *see also Debrosse v. City of New York*, 739 F. App'x 48, 50 (2d Cir. 2018) ("We have explained that a malicious prosecution plaintiff's 'mere conjecture and surmise' are insufficient to overcome the presumption of probable cause resulting from the indictment."); *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) ("[Plaintiff] has supplied only his suspicions of impropriety as proof of the defendants' misconduct before the grand jury.").

It is undisputed that Plaintiff was indicted by a grand jury on August 13, 2015.  (Defs.' 56.1 ¶¶ 53–54; Pl.'s Kings County Indictment; Pl.'s Dep. 103:3–9.)  Plaintiff was indicted for four counts of robbery in the first degree, four counts of robbery in the second degree, two counts of robbery in the third degree, three counts of burglary in the first degree, four counts of robbery in the second degree, one count of robbery in the third degree, assault in the second degree, two counts of assault in the third degree, two counts of menacing in the second degree, two counts of petit larceny, and two counts of criminal possession of stolen property in the fifth degree.  (Pl.'s Kings County Indictment.)  Plaintiff was tried for charges of two counts of robbery in the first degree, burglary in the first degree, two counts of robbery in the second degree, burglary in the third degree, and two counts of criminal possession of stolen property in the fifth degree.  (Defs.' 56.1 ¶¶ 53–54; Excerpts from Pl.'s Tr. Proceedings.)  Accordingly, the presumption of probable cause attaches to all of the charges for which Plaintiff was tried.  *See Soto v. City of New York*, 132 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) ("The [g]rand [j]ury

indicted [p]laintiff on multiple counts of robbery in the second degree, burglary in the first and second degrees, and one count each of attempted assault in the first degree, assault in the second degree, kidnapping in the second degree, and unlawful imprisonment in the first degree, creating a presumption of probable cause as to each.").

Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendants procured his indictment through fraud, perjury, or other bad faith.  In the Complaint, Plaintiff alleges that Defendants "offer[ed] false testimony to the Kings County Grand Jury" which resulted in his indictment.  (Compl. ¶ 50.)  However, Plaintiff does not offer any evidence to support this claim.  It is undisputed that Plaintiff was not present before the grand jury and therefore he could not witness any false testimony being provided, (*see* Pl.'s Dep. 114:5–11), and Plaintiff does not provide evidence, such as grand jury minutes, to support his allegations.  *See Soto*, 132 F. Supp. 3d at 456 (finding that presumption of probable cause created by indictment was not defeated when the "[p]laintiff merely surmises there was bad faith" and "has neither sought nor produced the grand jury minutes in this matter precluding any further evaluation of what occurred before the grand jury").

In addition, because Defendants had probable cause to arrest Plaintiff based on Pujols' identification, that probable cause also defeats Plaintiff's malicious prosecution claim.  *See Tortora*, 2019 WL 9100369, at *20 ("Even though the standard for probable cause in the context of a malicious prosecution claim is 'slightly higher' than the standard for a false arrest claim, a victim's identification of the alleged perpetrator and description of the alleged conduct is generally sufficient to support probable cause and defeat a malicious prosecution claim in the absence of any facts dissipating probable cause after an arrest." (quoting *Keith*, 641 F. App'x 67)); *id.* ("Although the probable cause standard in the malicious prosecution context is slightly

29

higher than the standard for false arrest cases, information from an identified citizen accusing another individual of the commission of a specific crime is [generally still] sufficient to provide the police with probable cause." (alteration in original) (quoting *Keith*, 641 F. App'x at 67)).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution.

### iv.   Excessive force

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because (1) Plaintiff cannot establish personal involvement for all Defendants, (2) Plaintiff did not suffer any injuries, and (3) any force utilized against Plaintiff was objectively reasonable.  (Defs.' Mem. 11–12.)  The Court addresses each argument in turn.

### 1.   Lack of personal involvement of Sergeants Cecchini, Evans, and Hillman and Officer Puccia

Defendants argue that Plaintiff cannot establish personal involvement of all Defendants as required under section 1983 because there is no evidence that Sergeants Cecchini, Evans, and Hillman, and Officers Puccia, Russ, and Trione were "personally involved in any use of force against [P]laintiff."  (*Id.* at 14.)  Defendants assert that because these officers were "involved in either the apprehension of the other [A]ssailants . . . or the processing of [P]laintiff's arrest" at the precinct, they are entitled to summary judgment on Plaintiff's excessive force claim as it pertains to these defendants.  (*Id.*)

As discussed above, defendants in alleged constitutional deprivations must be personally involved as "a prerequisite to an award of damages under [section] 1983.'"  *Victory*, 814 F.3d at 67 (quoting *Farrell*, 449 F.3d at 484).

The Court grants Defendants' motion for summary judgment as to the excessive force claim against Sergeants Cecchini, Evans and Hillman and Officer Puccia because, based on the

undisputed facts, there is no evidence that they participated in, and were therefore personally involved with, Plaintiff's arrest as Plaintiff contends that Defendants used excessive force while effectuating his arrest.  (*See* Compl. ¶¶ 29–30 (alleging that the officers forced Plaintiff to "lie face down in front of the sneaker store"); Pl.'s Dep. 60:13–22 (stating that the officers "tackled" Plaintiff to the ground and handcuffed him).)  For the reasons discussed above, Sergeants Cecchini, Evans, and Hillman and Officer Puccia were not personally involved with Plaintiff's arrest and therefore could not have engaged in use of any force against Plaintiff, much less excessive force as alleged.  (*See* Puccia Trial Tr. 805:1–25; Evans Trial Tr. 702:20–25; Pl.'s Dep. 174:14–25.)

However, drawing all inferences in favor of Plaintiff, there is a dispute as to whether Officers Russ and Trione were personally involved with Plaintiff's arrest and therefore as to whether they used excessive force to effectuate his arrest.  Although it is undisputed that Officers Russ and Trione were in the car with Pujols when he identified Plaintiff, (*see* Defs.' 56.1 ¶ 28; Russ Trial Tr. 420:23–421:8; Pl.'s Dep. 52:1–53:11), Plaintiff stated that he believes Officer Russ was an arresting officer because his name was on his arrest paperwork, (Pl.'s Dep. 173:2–23).  While there is no explicit evidence indicating that Officer Trione directly participated in any use of force against Plaintiff during his arrest, because Officers Trione and Russ were together minutes before the arrest, (Russ Trial Tr. 420:23–421:8), and Officer Russ' name appears on Plaintiff's arrest paperwork, a jury could find that Officer Trione was, at the very least, present during the alleged use of force and therefore personally involved.  *See Walker v. Raja*, No. 17-CV-5202, 2020 WL 606788, at *5 (E.D.N.Y. Feb. 7, 2020) ("In the absence of evidence that [the defendant officers] were not present — evidence that the [c]ourt presumes

[d]efendants have access to and would have produced if it existed — the [c]ourt finds that the presence of these officers is, at a minimum, disputed.").

Accordingly, the Court finds that Sergeants Cecchini, Evans, and Hillman and Officer Puccia were not personally involved in the alleged use of excessive force, but a jury could reasonably find that Officers Russ and Trione were personally involved based on their likely presence during Plaintiff's arrest.

### 2.   Reasonableness of force used and injury

Defendants argue that Plaintiff's excessive force claim fails because the force used by Defendants to effectuate the arrest was objectively reasonable given that they had reason to believe Plaintiff could be armed as Plaintiff had been identified as a suspect in an "armed assault and robbery just minutes earlier." (Defs.' Mem. 12.)  In addition, Defendants contend that while the parties dispute the specifics of Plaintiff's apprehension, even accepting Plaintiff's version of events to be true, Plaintiff was "actively resisting *before* [D]efendants utilized any force" and it is undisputed that Defendants only used force to effectuate his arrest.  (*Id.*)

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest.  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Because the Fourth Amendment's test is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors.  *Id.*  When determining whether the force applied was "excessive," a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Id.* (first citing *Graham*, 490 U.S. at 396; and then citing

*Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)); *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999))).  However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397); *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968))).  Courts must therefore "evaluate the record 'from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight.'"  *Tracy*, 623 F.3d at 96 (quoting *Jones*, 465 F.3d at 61).  "[G]ranting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  *Concepcion v. N.Y.C. Dep't of Educ.*, --- F. App'x ---, ---, No. 19-CV-1693, 2020 WL 7018211, at *2 (2d Cir. Nov. 30, 2020) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

"[T]he extent of injury" is a "relevant" but non-dispositive factor in evaluating an excessive force claim.  *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010).  "[I]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."  *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).  "[A] very minimal injury" may therefore be "'sufficient to trigger potential liability' for excessive force" under the right circumstances.  *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2010);

*see also Hayes v. N.Y.C. Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising." (citing *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004))).

Although excessive force is a fact-intensive issue, the Court finds that summary judgment is warranted on Plaintiff's excessive force claim because, even accepting as true the most favorable version of Plaintiff's testimony, no reasonable jury could find that the officers' conduct was objectively unreasonable. The parties dispute (1) whether Plaintiff resisted arrest in some form and (2) whether force was used during Plaintiff's apprehension. Accepting the most favorable version of Plaintiff's description of his encounter with Defendants to be true, Plaintiff was apprehended by Defendants outside of Foot Locker when Defendants attempted to handcuff him, but he resisted by "brushing" the officers off while they attempted to restrain him and by putting his arm back down to his side each time officers attempted to grab it.[18] (Pl.'s Dep. 61:22–25.) Plaintiff was "tackled to the ground and then . . . handcuffed and put . . . in the cop car." (*Id.* at 60:21–22.) Based on the facts as construed in Plaintiff's favor, an evaluation of the relevant factors, and the totality of the circumstances, the Court concludes that a reasonable juror could not find that Defendants' actions in tackling Plaintiff were excessive.

First, the Court concludes that the severity of the crime — alleged armed robbery — constitutes a serious and dangerous crime under the circumstances and it was objectively reasonable for Defendants to view Plaintiff as an "immediate threat to the safety of the officers and others" given his undisputed positive identification by the complaining victim. *Tracy*, 623 F.3d at 96; *see also Burks v. Perrotta*, No. 13-CV-5879, 2015 WL 2340641, at *4 (S.D.N.Y.

---

[18]   In addition, Plaintiff first testified that he "slapp[ed] [the officers'] hands away," (Pl.'s Dep. 61:22–25), but later testified a short time later that he did not slap the officers' hands away because "[t]hat's assault," (*id.* at 71:17–19).

May 15, 2015) ("It is indisputable that the crime which led to [p]laintiff's arrest — armed robbery — was extremely serious."); *Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 371–72 (E.D.N.Y. 2008) ("[T]here is no genuine issue of material fact as to whether it was objectively reasonable for the defendant arresting officers to believe that a suspect in an armed robbery posed a danger to them and to others . . . ."); *Ferguson v. City of New York*, No. 17-CV-4090, 2018 WL 3233131, at *6 (E.D.N.Y. July 2, 2018) (suggesting that a victim identification of plaintiff as a robber in an armed robbery may justify the use of some degree of force to apprehend).  As discussed above, the undisputed facts confirm that Plaintiff was identified by Pujols as one of the Assailants in the armed robbery that had occurred minutes before and that the officers relied on Pujols' identification when apprehending Plaintiff.  (Defs.' 56.1 ¶ 28; Russ Trial Tr. 420:23–421:8; Pl.'s Dep. 52:1–53:11.)

Taking the most favorable version of Plaintiff's facts to be true, Plaintiff's conduct amounted to "actively resisting arrest" and thus establishes that Defendants' tackling of Plaintiff was reasonable.  *See Tracy*, 623 F.3d at 96.  Assuming Plaintiff's version of events to be true, Defendants pushed or tackled Plaintiff to the ground after they asked Plaintiff to "put [his] hands behind [his] back," because Plaintiff, by his own admission, was attempting to resist arrest and prevent Defendants from handcuffing him.  (*See* Pl.'s Dep. 60:3–17, 62:1–4.)  Courts in this circuit have found officers' use of force to effectuate an arrest justified when a suspect is resisting arrest by contorting their body or otherwise making it difficult to handcuff them.  *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) (finding a single punch to subdue plaintiff when the plaintiff "was doing something with his hands that made it difficult to handcuff him" when plaintiff's arrest followed gunshots coming from his direction objectively reasonable); *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 646

(S.D.N.Y. 2020) (finding officers' use of force by striking plaintiff with metal flashlight was objectively reasonable when plaintiff was resisting arrest by "stiffening his arms, throwing his arms back, and generally making it difficult to handcuff him").

In addition, tackling or shoving a plaintiff down to the ground can be an objectively reasonable response to a plaintiff resisting arrest. *Kalfus v. N.Y. & Presbyterian Hosp.*, 706 F. Supp. 2d 458, 472–73 (S.D.N.Y. 2010) (finding that the video of plaintiff's arrest for trespass showed that the plaintiff was "clearly resisting" as he refused to stand and "clearly pushed back with his weight" when officers put him face down on a concrete slab to handcuff him and, thus, the officers used "only objectively reasonable force under the circumstances"), *aff'd*, 476 F. App'x 877 (2d Cir. 2012); *cf. Lupinacci v. Pizighelli*, 588 F. Supp. 2d 242, 250 (D. Conn. 2008) (finding tackling of innocent bystander objectively unreasonable because "an objective officer would not think it reasonable to tackle an individual to the sidewalk, without in any way first asking the individual to voluntarily submit to an arrest."). For example, in *Chaney v. City of Albany*, a plaintiff claimed that he was subjected to excessive force when officers tackled him to the ground and handcuffed him as he tried to enter a store. No. 16-CV-1185, 2019 WL 3857995, at *10 (N.D.N.Y. Aug. 16, 2019). In that case, the court found that tackling the plaintiff was objectively reasonable because it was undisputed that the defendant officers had probable cause to believe that plaintiff had committed drug crimes, that the officers "did not know whether [p]laintiff and his associates were armed," and that there was no evidence that plaintiff suffered any injury resulting from defendant officers' actions.[19]  *Id.* at *10. Similarly, in *Young v.*

---

[19]  Defendants argue that they are entitled to summary judgment because Plaintiff suffered no injury to support a claim for excessive force. However, as discussed *supra*, a plaintiff's injury is a "relevant" but non-dispositive factor in evaluating an excessive force claim. *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010). Accordingly, while it is undisputed

*Cabrera*, a plaintiff claimed excessive force when defendant officers "threw [plaintiff] to the ground" in attempting to effectuate his arrest.  No. 18-CV-3028, 2020 WL 7042759, at *5 (E.D.N.Y. Nov. 30, 2020).  Plaintiff had been identified as the perpetrator of a knifepoint robbery by the complaining victim who identified him "from the back seat of the police car."  *Id.* at *1.  The court found that the officers acted reasonably under the circumstances when they tackled the plaintiff because the plaintiff was identified as the perpetrator of a serious crime and likely possessed a weapon.  *Id.* at *4–5.

Under the circumstances of this case, like the cases discussed above, even accepting the most favorable version of Plaintiff's testimony to be true, a reasonable jury could not find in Plaintiff's favor because Defendants' "tackling [of Plaintiff] to the ground" was warranted — Plaintiff was identified by the complaining victim as one of the Assailants in the armed robbery and resisted arrest by "brushing" the officers off while they attempted to restrain him.

Accordingly, the Court finds that, under the totality of the circumstances, there are no disputed issues of fact that preclude a finding at the summary judgment stage that Defendants use of force, if any, was objectively reasonable.[20]

---

that Plaintiff was not injured while in NYPD custody, aside from minor scratches that Plaintiff did not describe as an injury, (Defs.' 56.1 ¶¶ 33–36; Pl.'s Dep. 71:1–9), the Court declines to grant summary judgment based on Plaintiff's lack of injury.

[20]  Defendants argue that the officers are entitled to qualified immunity on Plaintiff's false arrest, malicious prosecution, and excessive force claims.  (Defs.' Mem. 18–20.)  Because as explained above, Plaintiff fails to show that the arrest, prosecution, and use of force were unlawful, the Court does not address whether the officers are entitled to qualified immunity on these claims.  *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("When a defendant officer . . . invokes qualified immunity to support a motion for summary judgment, a court must first consider [whether] . . . the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violate[d] a constitutional right[.]  If [it did not], 'there is no necessity for further inquiries concerning qualified immunity.'" (internal quotation marks omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))); *see also Powell v. City of New York*, No.

###### v.   Fair trial

Defendants argue that they are entitled to summary judgment on Plaintiff's fair trial claim because Plaintiff (1) cannot establish that Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione were personally involved in any alleged fabrication of evidence and (2) "cannot establish that any evidence was fabricated or that he suffered any resulting deprivation of liberty."  (Defs.' Mem. 14.)  The Court addresses each argument in turn.

> #### 1.   Lack of personal involvement of Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione

Defendants argue that Plaintiff cannot establish personal involvement of all Defendants as required under section 1983 because there is no evidence that Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione were personally involved in any fabrication of evidence.  (*Id.* at 17.)  In support, Defendants argue that because there is no evidence that any defendant other than Detective Bulzomi and Officer Russ handled processing of Plaintiff's arrest or the collection and handling of the property Defendants allege they recovered from Plaintiff, no reasonable jury could find that Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione were personally involved in fabricating evidence.  (*Id.*)

As discussed above, defendants in alleged constitutional deprivations must be personally involved as "a prerequisite to an award of damages under [section] 1983.'"  *Victory*, 814 F.3d at 67 (quoting *Farrell*, 449 F.3d at 484).

---

14-CV-09937, 2016 WL 4159897, at *11 (S.D.N.Y. July 14, 2016) ("There is no need to linger on the qualified immunity analysis in this case, since, as shown above, no constitutional violation can be made out, even on a favorable view of the parties' submissions." (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201)).

The Court grants Defendants' motion for summary judgment as to the fair trial claim against Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione because the undisputed facts do not demonstrate that they participated in, and therefore there is no evidence that they were personally involved with, the alleged fabrication of evidence. As Defendants argue, it is undisputed that Detective Bulzomi searched Plaintiff incident to his arrest and located several cellular telephones and a wallet.  (Defs.' 56.1 ¶¶ 37–38; Pl.'s Dep. 58:23–59:23.)  It is also undisputed that at the precinct, Officer Russ took several photographs of the property recovered from Plaintiff and returned the property recovered and identified as stolen to Pujols and Agosto.  (Defs.' 56.1 ¶ 48; Russ Trial Tr. 428:17–21.)  The only evidence of any other police officers' involvement is that Officer Puccia apprehended Patterson and made a list of items recovered from him.  (Defs.' 56.1 ¶¶ 41–42; Puccia Trial Tr. 805:5–21.)  However, Officer Puccia's involvement with Patterson does not implicate Officer Puccia's involvement with Plaintiff.  *See Cortes*, 148 F. Supp. 3d at 255 (finding that defendant officer was not personally involved when there was no evidence that defendant had anything to do with the plaintiff's arrest and arrived after the arrest occurred).

Accordingly, the Court grants Defendants' motion for summary judgment based on lack of personal involvement as to Plaintiff's claim for denial of his right to a fair trial against Sergeants Cecchini, Diaz, Evans, and Hillman, and Officers Puccia, Schwartz, and Trione.  *See Demosthene v. City of New York*, No. 14-CV-816, 2018 WL 10072931, at *8 (E.D.N.Y. July 20, 2018) ("Because [p]laintiff has not presented facts that could show [defendants'] personal involvement in the alleged evidence fabrication . . . he cannot succeed on this claim."), *report and recommendation adopted*, No. 14-CV-816, 2019 WL 3992868 (E.D.N.Y. Aug. 16, 2019), *aff'd*, 831 F. App'x 530 (2d Cir. 2020).

## 2.   Fabrication of evidence

Defendants argue that they are entitled to summary judgment on Plaintiff's fair trial claim because Plaintiff does not substantiate his claims that Defendants falsified evidence.  (Defs.' Mem. 15–16.)  In support, Defendants argue that this Court has previously held that "summary judgment must be awarded to the defendants if nothing in the record suggests that defendants fabricated evidence, such that no reasonable juror could conclude as much."  (*Id.* (citing *Soto*, 132 F. Supp. 3d at 457–58).)  Defendants argue that summary judgment in their favor is warranted because (1) the record is "devoid of any evidence suggesting that the evidence was fabricated," (2) Plaintiff is judicially estopped from disputing that Plaintiff was in possession of Pujols' driver's license at the time of his arrest,[21] (3) the objective evidence does not establish that any defendant alleged that a gold chain was found on Plaintiff as Plaintiff claims, and (4) Plaintiff cannot credibly dispute the recovery of Pujols' cellular telephones from his person. (*Id.* at 15–16.)  In addition, Defendants assert that Plaintiff did not suffer any deprivation of liberty because Plaintiff's arrest was supported by independent probable cause and "there is no evidence in the record demonstrating that any of the allegedly fabricated property ultimately affected the prosecutor's decision to pursue charges or prosecute plaintiff."  (*Id.* at 16–17.)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of

---

[21]   As discussed *supra* note 15, the Court declines to judicially estop Plaintiff from making this assertion.

life, liberty, or property as a result."[22]  *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017)

(quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).  To satisfy the

third element, the fabricated evidence need not actually reach a jury.  The Second Circuit only

requires "a showing . . . that the [false] information would likely influence the jury if it arrived at

a jury."  *Cook v. City of New York*, 243 F. Supp. 3d 332, 351 (E.D.N.Y. 2017) (alteration in

original) (quoting *Garnett v. Undercover Officer C0039*, No. 13-CV-7083, 2015 WL 1539044, at

*8 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265, 279 (2d Cir. 2016)).  Because materiality

(element three) and causation (element five) are two distinct elements, "the fact that allegedly

fabricated evidence would be inadmissible at trial by itself is not a bar to the claim."  *Id.* (quoting

*Soomro v. City of New York*, 174 F. Supp. 3d 806, 816 (S.D.N.Y. 2016)).

Unlike a false arrest or malicious prosecution claim, "'[p]robable cause is not a defense'

to a claim for a denial of the right to a fair trial" based on the fabrication of evidence.  *Garnett*,

838 F.3d at 277 (alteration in original) (quoting *Jovanovic v. City of New York*, 486 F. App'x

149, 152 (2d Cir. 2012)).  Qualified immunity is also unavailable on "a claim for denial of the

right of a fair trial where the claim is premised on proof that a defendant knowingly fabricated

evidence and where a reasonable jury could so find."  *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir.

---

[22]  The Supreme Court's dicta in *McDonough* creates an open question as to whether
favorable termination is an element of a fair trial claim.  *McDonough v. Smith*, 588 U.S. ---, ---,
139 S. Ct. 2149, 2156 (2019) (holding that the plaintiff "could not bring his fabricated-evidence
claim under [section] 1983 prior to favorable termination of his prosecution"); *see also
Maradiaga v. City of New York*, No. 16-CV-8325, 2020 WL 5849465, at *5 (S.D.N.Y. Oct. 1,
2020) (quoting *McDonough*, 139 S. Ct. at 2156); *Smalls v. Collins*, No. 14-CV-2326, 2020 WL
2563393, at *3 (E.D.N.Y. Mar. 16, 2020) ("Given its recency, few courts in [the Second] Circuit
have had occasion to consider whether *McDonough* should be construed as imposing a favorable
termination requirement for [section] 1983 fair-trial claims . . . . Those that have . . . suggest[]
that it should be construed as imposing such a requirement.").  The Supreme Court's dicta in
*McDonough* is not relevant to the Court's determination in this case.

2015).  However, witnesses who provide information to prosecutors in judicial proceedings have absolute immunity for the testimony they provide.  *See Jovanovic*, 486 F. App'x at 152.

In the Complaint, Plaintiff asserts that Defendants "manufactured evidence of criminality" that prosecutors relied on "to initiate criminal actions" against him.  (Compl. ¶ 79.) In his deposition, Plaintiff testified that Defendants fabricated: (1) the location of his arrest, (2) that Pujols' property was found on his person including several iPod devices and telephones — some of which Plaintiff contended were his own property and some of which he alleges he did not have on his person, (3) that Pujols' driver's license was found on his person, and (4) that a gold chain was found on his person.  (*See* Pl.'s Dep. 117:2–121:5, 134:2–20.)

The Court grants Defendants' motion for summary judgment with respect to Plaintiff's fabrication of evidence claim.  In support of his false evidence claim, Plaintiff maintains that Defendants fabricated that Pujols' property was found on his person, (Pl.'s Dep. 54:8–54:17, 114:12–114:14 (stating that he owned all property that was found on his person)), and the location of his arrest, (Pl.'s Dep. 46:25–47:2, 49:21–50:4).  Although plaintiffs can generally rely on their own testimony to demonstrate a genuine dispute of material fact, *see Jocks*, 316 F.3d at 138, Plaintiff offers no evidence in support of his claims that the evidence was planted, which alone are insufficient to "withstand summary judgment" for false evidence allegations.  *Apostol v. City of New York*, No. 11-CV-3851, 2014 WL 1271201, at *6 (E.D.N.Y. Mar. 26, 2014) ("Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims — for example, that someone must have planted the marijuana, or that [the officer] would have notified plaintiffs immediately that he had discovered marijuana if his discovery were genuine."), *aff'd*, 607 F. App'x 105 (2d Cir. 2015); *see also Isaac v. City of New York*, No. 16-CV-4729, 2020 WL 1694300, at *9 (E.D.N.Y. Apr. 6, 2020) ("Plaintiff claims that the testimony of four

witnesses and [the] defendant . . . was false, but offers no evidence in support, other than his own

testimony."); *Carlisle v. City of New York*, No. 05-CV-6825, 2007 WL 998729, at *3 (S.D.N.Y.

Apr. 2, 2007) ("[P]laintiff's unsupported, conclusory allegation that someone must have planted

the evidence because there is no other way it could have gotten [there] is not sufficient to defeat

a motion for summary judgment." (alterations in original)); *Shmueli v. City of New York*, No. 03-

CV-1195, 2007 WL 1659210, at 6 (S.D.N.Y. June 7, 2007) (granting defendants summary

judgment on plaintiff's claim that ex-boyfriend conspired with prosecution to fabricate evidence

that plaintiff harassed him telephonically, where plaintiff provided testimony from herself and a

friend that the ex-boyfriend repeatedly telephoned his own office from plaintiff's apartment).[23]

In addition, the Court finds that there is no genuine dispute of material fact with respect

to the gold chain because there is no evidence that Defendants alleged that the gold chain was

found on Plaintiff, (Pl.'s Dep. 134:8–11; List of Items Recovered from Pl. ("Bulzomi List"),

annexed to Spears Decl. as Ex. I, Docket Entry No. 43-9), and therefore there is no fabrication of

evidence. *See Soto*, 132 F. Supp. 3d at 458 (finding that "no reasonable juror could conclude

---

[23]  Although the Court grants Defendants' motion for summary judgment, the Court
rejects Defendants' argument that because independent probable cause existed, Plaintiff has
suffered no deprivation of liberty.  As discussed above, probable cause "is not a defense to a fair
trial claim based on the fabrication of evidence" because "even if 'a privileged arrest accounted
for at least some portion of the deprivation of [a § 1983 plaintiff's] liberty,' the plaintiff may still
'suffer[] a deprivation of liberty as a result of [an] officer's fabrication.'"  *Frost*, 980 F.3d at 248
(alterations in original) (quoting *Garnett*, 838 F.3d at 277–78).  Plaintiff suffered deprivation of
his liberty in the form of his post-arraignment detention for nearly two years before he made bail
in the amount of $30,000.  (*See* Pl.'s Dep. 82:15–83:4; Bail Form.)  Accordingly, "there can be
no question" that Plaintiff suffered a deprivation of liberty.  *Murphy*, 118 F.3d at 944; *see also
Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (noting that "any post-
arraignment deprivations of liberty (such as being bound-over for trial) might" be adequate to
maintain a section 1983 claim); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL
5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016) (collecting cases).

that [d]efendants fabricated evidence" when "[n]othing in the record suggests that the [i]ndividual [d]efendants invented or even changed the words in [p]laintiff's messages").

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's fabrication of evidence claim.

### vi.  Conspiracy

Defendants argue that they are entitled to summary judgment because Plaintiff does not adduce any evidence that suggests Defendants entered into an agreement "to achieve an unlawful end." (Defs.' Mem. 22–23.)  Defendants also argue that because Plaintiff's claims are "wholly conclusory," Plaintiff's conspiracy claim fails as a matter of law.

To state a claim for conspiracy under section 1983, a "plaintiff must plausibly allege (1) an agreement between a state actor and a private party (2) to act in concert to inflict unconstitutional injury, and (3) an overt act furthering that goal and causing damages." *Corsini v. Brodsky*, 731 F. App'x 15, 19 (2d. Cir 2018) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002)); *see also Bukowski v. Spinner*, 709 F. App'x 87, 89 (2d Cir. 2018) (dismissing the plaintiff's section 1983 conspiracy claim because "oblique reference to those private actors conspiring with [the defendant] to deprive her of her child is fatally conclusory or otherwise unsupported" (citing *Ciambriello*, 292 F.3d at 324)); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (dismissing the plaintiff's section 1983 conspiracy claim where "not a single fact . . . corroborate[d] her allegation of a 'meeting of the minds' among the conspirators"); *Ciambriello*, 292 F.3d at 325 ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . ."); *White v. Abney*, No. 17-CV-4286, 2019 WL 1298452, at *6–7 (E.D.N.Y. Mar. 21, 2019) (dismissing complaint where the plaintiff did

not allege facts to support section 1983 conspiracy claim that the defendants sought to have him arrested based on false information).

The Court grants Defendants' motion for summary judgment because there is no evidence in the record that supports a meeting of the minds or an agreement between Defendants to inflict a constitutional injury.  Plaintiff's deposition testimony does not establish any element of a conspiracy claim and his Complaint only states that "defendant officers met with themselves and with several other individuals on numerous occasions and agreed to deprive [P]laintiff of his constitutional rights."  (Compl. ¶ 96.)  This threadbare and conclusory assertion is insufficient to show an agreement, which is necessary to maintain a section 1983 conspiracy claim.  *See Corsini*, 731 F. App'x at 18 (affirming dismissal of the plaintiff's section 1983 conspiracy claim because the plaintiff made only threadbare recitals of the elements of the claim); *Robbins v. Cloutier*, 121 F. App'x 423, 425 (2d Cir. 2005) (finding allegations that the defendants "'acted in a concerted effort, . . . agreed to not hire [the plaintiff] and to inform other . . . entities to refrain from hiring [the plaintiff]' and '. . . [did] overt acts in order to effectuate their common plan'" to be conclusory and insufficient to maintain a section 1983 conspiracy claim); *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 92 (E.D.N.Y. 2015) ("Plaintiff's own unsubstantiated speculation and allegations do not support finding a genuine issue of material fact as to the alleged conspiracy.").

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's section 1983 conspiracy claim.

### vii.   Excessive detention

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive detention claim[24] because Defendants "could not have conclusively established [P]laintiff's innocence at any point during his pre-trial incarceration."  (Defs.' Mem. 21.)

"Unreasonably prolonged pretrial detention where exculpatory evidence is readily available can form the basis of a section 1983 claim against police officers as a violation of the Fourth Amendment's protection against unreasonable seizures."  *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 622 (E.D.N.Y. 2017) (citing *Russo v. City of Bridgeport*, 479 F.3d 196, 208–09 (2d Cir. 2007)).  To prevail on this claim, a plaintiff "must establish (1) that he has a right to be free from continued detention stemming from law enforcement officials' mishandling or suppression of exculpatory evidence, (2) that the actions of the officers violated that right, and (3) that the officers' conduct 'shocks the conscience.'"  *Russo*, 479 F.3d at 205 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *Gill v. Dawkins*, No. 16-CV-1398, 2020 WL 7042647, at *7 (E.D.N.Y. Nov. 30, 2020).  To determine whether a plaintiff's detention is excessive in violation of the Fourth Amendment, the Second Circuit considers: "(1) the length of time the plaintiff was incarcerated; (2) the ease with which the exculpatory evidence in the officers' possession could have been checked; and (3) the alleged intentionality of the

---

[24] Plaintiff's Complaint referenced "excessive detention" but does not specify whether he is asserting a claim based on pre-arraignment detention delay or pre-trial detention delay.  (*See* Compl. ¶¶ 73–77.)  As a general matter, "a presumption of reasonableness has long applied to pre-trial detentions that last for fewer than 48 hours."  *Miller v. City of New York*, 700 F. App'x 57, 59 (2d Cir. 2017) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)); *see Bryant v. City of New York*, 404 F.3d 128, 138 (2d Cir. 2005) ("What is constitutionally required is that, except in extraordinary circumstances, the arrestee be given a hearing into probable cause for the arrest within 48 hours.").  Because Plaintiff was arraigned less than twenty-four hours after his arrest, (*see* Defs.' 56.1 ¶¶ 50–51; Arraignment Form), and was incarcerated for nearly two years prior to trial, (*see* Pl.'s Dep. 65:23–66:4), the Court construes Plaintiff's claim as one for excessive pre-trial detention.

defendants' behavior." *Ying Li*, 246 F. Supp. 3d at 622 (citing *Russo*, 479 F.3d at 209); *Clase v. United States*, No. 17-CV-02247, 2020 WL 6438757, at *6 (E.D.N.Y. Nov. 2, 2020) ("When assessing whether detention violated a plaintiff's Fourth Amendment rights, courts consider: (1) the length of time the plaintiff was incarcerated, (2) the ease with which the exculpatory evidence in the defendant officers' possession could have been checked, and (3) the alleged intentionality of defendants' behavior." (citing *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 401 (E.D.N.Y. 2014)), *report and recommendation adopted*, No. 17-CV-2247, 2020 WL 7021593 (E.D.N.Y. Nov. 30, 2020).

The Court grants Defendants' motion for summary judgment because there is no evidence in the record indicating that Defendants mishandled or suppressed any exculpatory evidence. *See Wilson v. City of New York*, 480 F. App'x 592, 595 (2d Cir. 2012) ("We held that criminal defendants have a right to be protected from 'a sustained detention stemming directly from the law enforcement officials' *refusal to investigate available exculpatory evidence*' particularly where the officials 'retain[] sole custody of the [exculpatory] evidence. . . .'" (emphasis added) (quoting *Russo*, 479 F.3d at 199)); *Russo*, 479 F.3d at 205 (holding that officers may be sued for prolonged detention when they mishandle exculpatory evidence and fail to turn it over to the prosecuting attorney); *Clase*, 2020 WL 6438757, at *6 (finding no material dispute of fact as to Plaintiff's excessive detention claim when plaintiff did not provide any evidence to prove exculpatory video evidence was suppressed intentionally); *Newson v. City of New York*, No. 16-CV-6773, 2019 WL 3997466, at *9 (E.D.N.Y. Aug. 23, 2019) ("Plaintiff does not expressly allege that the NYPD wrongfully withheld evidence from prosecutors."); *Harewood*, 64 F. Supp. 3d at 402 ("The touchstone of an unreasonable detention claim is the

47

existence of egregious conduct by an officer in connection with specific, readily-accessible, exculpatory evidence.").

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's section 1983 unreasonable detention claim.

### viii.  Failure to intervene

Defendants argue that they are entitled to summary judgment on Plaintiff's failure to intervene claim because no conduct by any defendant violated Plaintiff's constitutional rights. (Defs.' Mem. 23.)  In the alternative, assuming that a right was violated, Defendants argue that there is no evidence that "any defendant had a realistic opportunity to intervene or that a reasonable person would realize that [P]laintiff's rights were being violated."  (*Id.*)

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)); *see also Theodat v. City of New York*, 818 F. App'x 79, 82 (2d Cir. 2020) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (quoting *Anderson*, 17 F.3d at 557)).  An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted); *see also Terebesi*, 764 F.3d at 244.

Because there is no genuine dispute of material fact as to any of Plaintiff's federal claims, Plaintiff's failure to intervene claims also fail.  *See also Wieder v. City of New York*, 569 F.

App'x 28, 30 (2d Cir. 2014) ("Because the underlying constitutional claims were properly

dismissed, we also affirm the district court's dismissal of plaintiff's failure to intervene claim.");

*Turyants v. City of New York*, No. 18-CV-841, 2020 WL 804900, at \*7 (E.D.N.Y. Feb. 18, 2020)

("[T]he absence of any underlying constitutional violations requires dismissal of [P]laintiff's

failure to intervene claims." (alterations in original) (quoting *Sharpe v. City of New York*, No. 11-

CV-5494, 2013 WL 2356063, at \*9 (E.D.N.Y. May 29, 2013)); *Tortora*, 2019 WL 9100369, at

\*13 ("[B]ecause Plaintiff has failed to provide sufficient evidence to support his underlying

constitutional claim of excessive pre-arraignment delay, Plaintiff's failure to intervene claim also

fails." (citing *Coleman v. City of New York*, No. 07-CV-1051, 2010 WL 571986, at \*5 (S.D.N.Y.

Feb. 2, 2010))); *Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("[T]he

failure to intervene claim is contingent upon the disposition of the primary claims underlying

[it]." (quoting *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012))).

Accordingly, the Court denies Defendants' motion for summary judgment as to

Plaintiff's failure to intervene claim.

### ix.   Municipal liability

Defendants argue that they are entitled to summary judgment on Plaintiff's municipal

liability claim because Plaintiff did not suffer any violation of a federally protected right.  (Defs.'

Mem. 20.)  In the alternative, Defendants argue that even if Plaintiff's constitutional rights were

violated, Plaintiff "has not set forth, or even alleged, any facts supporting the notion that the

purported constitutional violations here were the product of any unconstitutional policy, custom,

or practice on the part of the City."  (*Id.* at 20–21.)  In support, Defendants point to Plaintiff's

statement at his deposition in which he was "entirely unable to articulate whether a particular

municipal policy, custom, or practice was the cause of his injuries."  (*Id.* at 21 (citing Pl.'s Dep. 167:12–22).)

In his Complaint, Plaintiff alleges that the City, acting through both the NYPD and the Office of the District Attorney of Kings County had policies, practices, and customs of failing to train and supervise or discipline its officers and district attorneys.  (Compl. ¶¶ 99–101.)  Plaintiff alleges that the City fails to train or supervise a host of activities, including, *inter alia*, using force, interviewing witnesses and informants, assessing credibility of witnesses and informants, prosecuting innocent persons, illegally stopping and frisking people on the basis of race, degrading and abusing persons on the basis of race, and vouching for and releasing seized property.  (*Id.* ¶¶ 100–103.)  Plaintiff also cites to over a dozen other suits against the City and argues that these suits involve allegations of wrongful conduct similar to that alleged in the Complaint and from which the Court can infer unconstitutional policies, practices, and conduct. (*Id.* ¶¶ 99–125.)

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost*, 980 F.3d at 258 ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))).  A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which

policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates.  *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick*, 757 F.3d at 62 (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (failing to "take appropriate action to prevent or sanction violations of constitutional rights" amounting to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012)); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

"[U]nder *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants."  *Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999); *see also Coleman v. Cnty. of Suffolk*, 685 F. App'x 69, 72 (2d Cir. 2017) ("[M]unicipal liability may arise absent an officer's constitutional deprivation if a deprivation was nonetheless caused by a non-party for whom the municipality is also bound to answer . . . ." (citing *Barrett v. Orange Cnty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999))); *Rutigliano v. City of New York*, 326 F. App'x 5, 9 (2d Cir. 2009) (affirming that a "'municipality may be found liable under [section] 1983 even in the absence of individual liability' . . . only in very special circumstances" (quoting *Barrett*, 194 F.3d at 350)).

The Court grants Defendants' motion for summary judgment as to Plaintiff's *Monell* claim.  In *Demosthene v. City of New York*, the court confronted a similar allegation —

apparently the exact same allegation made by the same attorney who filed Plaintiff's Complaint before withdrawing from the case — of an unconstitutional pattern and practice by the City premised on dozens of other federal lawsuits.  2019 WL 181305, at *9.  In that case, the [p]laintiff alleged that those lawsuits "compel an 'infer[ence]' that the City maintains various unconstitutional policies."  *Id.* at *9 (alteration in original).  The court found that these allegations fell short of stating a claim for municipal liability for several reasons.  The first reason was that "the mere fact that plaintiffs in other lawsuits have alleged unconstitutional treatment similar to the violations alleged by plaintiff does not mean that the City is liable for these alleged violations."  *Id.*  The second reason was that the plaintiff relied on complaints "premised on a different set of factual allegations" than the one at hand in the litigation.  *Id.* at *10 (quoting *Simms v. City of New York*, 480 F. App'x 627, 630 (2d Cir. 2012)).  As an example, the court noted that the plaintiff's reliance on *Jones v. City of New York*, 603 F. App'x 13, 15 (2d Cir. 2015) was inapposite because that case involved allegations that the City "had a policy of 'charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm.'"  *Demosthene*, 2019 WL 181305, at *9 (quoting *Jones*, 603 F. App'x at 15).  The court found that *Jones* was unrelated to the plaintiff's case because he did not allege that a member of his group had a firearm and instead asserted that "there was *nothing* to connect him to the crime, and that his arrest was based on fabrications." *Id.*  Finally, the court also found that dismissal of the *Monell* claim was warranted because "plaintiff simply allege[d] prior misconduct," which is insufficient to support a municipal liability claim "absent evidence of the City's reaction to those claims."  *Id.*

The Court is in the exact same position as the district court in *Demosthene*.  Plaintiff's Complaint similarly cites *Jones* and over a dozen other cases that are fundamentally different

from Plaintiff's claim that his arrest was based on fabricated evidence.  Plaintiff also asks the Court to infer a current policy and practice of unconstitutional conduct on behalf of the City premised on prior misconduct.  Plaintiff provides no evidence of a policy or practice to support his allegations in the Complaint.  As Defendants note, Plaintiff does not state in his deposition that there is a specific New York City policy that is the cause of his alleged constitutional injuries, (Pl.'s Dep. 167:12–22), and the Court does not find any evidence in the record to substantiate Plaintiff's allegations.

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's municipal liability claim.

### d.   Plaintiff's remaining state law claims

Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  (Defs.' Mem. 24–25.)

In view of the Court's dismissal of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims for false arrest and imprisonment, assault and battery, malicious prosecution, unreasonable search and seizure, negligence, and negligent and intentional infliction of emotional distress and several claims under Article I, §§ 5, 6, 8, 11, and 12 of the New York State Constitution.  See 28 U.S.C. § 1367(c)(3) ("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.").  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan*

*Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims . . . ."). Accordingly, the Court dismisses Plaintiff's state law claims without prejudice.

### e. Claims against John and Jane Doe Defendants

Defendants Police Officers John and Jane Does #1–5 have not appeared in this action since Plaintiff filed his Complaint on June 21, 2018. Further, the Court has not received any indication that Plaintiff has tried to identify John/Jane Does #1–5. The Court finds that Plaintiff has had sufficient time and opportunity to identify John/Jane Does #1–5, and therefore the Court *sua sponte* dismisses all claims against them. *See Tortora*, 2019 WL 9100369, at *25 (dismissing claims against John and Jane Doe defendants at summary judgment stage when the plaintiff had not identified the defendants in the three years since the action was commenced); *Engles v. Jones*, No. 13-CV-6461, 2018 WL 6832085, at *11 (W.D.N.Y. Dec. 28, 2018) ("Dismissal of claims against John Doe defendants is appropriate where a plaintiff has had ample time and opportunity to discover the identity of the John Doe [d]efendants and serve them but has failed to do so." (citation and internal quotations omitted)); *see also Young v. Cabrera*, No. 18-CV-3028, 2020 WL 7042759, at *8 (E.D.N.Y. Nov. 30, 2020) ("[I]t is well settled that where . . . discovery has closed, the proper course is to dismiss the John Doe [d]efendants without prejudice." (quoting *Cox v. Village of Pleasantville*, 271 F. Supp. 3d 591, 618 (S.D.N.Y. 2017))); *Williams v. Johnson*, No. 17-CV-2351, 2019 WL 1437820, at *8 (S.D.N.Y. Mar. 31, 2019) (dismissing claims *sua sponte* against unidentified John Doe defendants when suit was filed

nearly two years ago and plaintiff "ha[d] not amended his complaint to identify the John Doe defendants").

## III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to Plaintiff's federal claims for false arrest, unreasonable search and seizure, unlawful stop and search, malicious prosecution, excessive use of force, denial of the right to a fair trial, conspiracy, excessive detention, failure to intervene, and *Monell* liability.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses those claims without prejudice.  The Court also dismisses all claims against the John and Jane Doe Defendants without prejudice.  The Clerk of Court is respectfully directed to close this case.

Dated: February 22, 2021
        Brooklyn, New York

                                SO ORDERED:


                                _____ s/ MKB _____
                                MARGO K. BRODIE
                                United States District Judge